UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMSUN LOGIX CORP., <br><br> Plaintiff, <br><br> v. <br><br> BANK OF CHINA, BANK OF COMMUNICATIONS CO. LTD., CHINA CONSTRUCTION BANK CORPORATION, CHINA MERCHANTS BANK CO., LTD., CHINATRUST COMMERCIAL BANK, LTD., INDUSTRIAL AND COMMERCIAL BANK OF CHINA LIMITED, AGRICULTURAL BANK OF CHINA LIMITED AND HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, <br><br> Defendants. | 10 Civ. 4203 (VM) |

**MEMORANDUM OF LAW OF DEFENDANTS BANK OF CHINA, BANK OF COMMUNICATIONS CO. LTD., CHINA CONSTRUCTION BANK CORPORATION, CHINA MERCHANTS BANK CO., LTD., INDUSTRIAL AND COMMERCIAL BANK OF CHINA LIMITED AND AGRICULTURAL BANK OF CHINA LIMITED IN OPPOSITION TO THE MOTION TO REMAND**

## TABLE OF CONTENTS

**FACTS** ............................................................................................................................... 2

    **1.**    **Non-U.S. Parties in a Non-U.S. Underlying Dispute** ....................................................... 2

    **2.**    **Samsun's Reliance On Federal Court Litigation** ............................................................. 3

**ARGUMENT** ..................................................................................................................... 5

    **I.**    **This Action Is Removable Because It Relates To An Arbitration Award Under the New York Convention** ................................................................................................. 5

        **a. All Required Parties Have Consented To Removal** ...................................................... 7

    **II.**   **This Action Is Removable Because It Arises Out Of An International Banking Transaction** .................................................................................................................. 8

        **a. It is Well-Settled that 12 U.S.C. § 632 Applies to National Banks** ............................ 9

        **b. Samsun's Cases on Section 3102(b) Have Nothing to Do with Federal Question Jurisdiction** ................................................................................................................ 10

**CONCLUSION** ................................................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

Acosta v. Master Maint. & Const., Inc., 52 F.Supp.2d 699 (M.D.La. 1999) ................................5, 6

Banco De Santander Central Hispano, S.A. v. Consalvi Int'l Inc., 425 F.Supp.2d 421 (S.D.N.Y. 2006) ..............................................................................................................................5, 6

Bank of America Corp. v. Lemgruber, 385 F. Supp. 2d 200 (S.D.N.Y. 2005) ................................10

Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367 (S.D.N.Y. 2006) ...................8

Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002) ................................................................................5

Conference of State Bank Supervisors v. Conover, 715 F.2d 604 (D.C. Cir. 1983) .........................12

Contitrade Services Corp. v. Eddie Bauer, Inc. 794 F. Supp. 514 (S.D.N.Y. 1992) .........................10

Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786 (2d Cir. 1980) ...........10

Cronan v. Schilling, 100 N.Y.S.2d 474 (N.Y. Sup. 1950), aff'd 282 A.D. 940 (1st Dep't 1953)......9

Dale Metals Corp. v. Kiwa Chemical Industry Co., Ltd., 442 F.Supp. 78 (S.D.N.Y. 1977)..............8

Elmaliach v. Bank of China Ltd., 09 Civ. 2130, 2010 WL 1172829 (S.D.N.Y. March 26, 2010) ..11

Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313 (2d Cir. 1973)........................7

Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533 (2009) ................................................................2

Lok Prakashan Ltd. v. India Abroad Publications, Inc., No. 00 Civ.5862(LAP), 2002 WL 1585820 (S.D.N.Y. July 16, 2002) ........................................................................................9

McDermott International, Inc. v. Lloyds Underwriters of London 944 F.2d 1199 (5th Cir. 1991) ........................................................................................................6

McHugh v. Westpac Banking Corp., Nos. 93 C 3058, 93 C 3059, 1995 WL 243339 (N.D.Ill. Apr. 24, 1995)..........................................................................................................10, 11, 12

Pujals v. First Nat'l City Bank, 440 F. Supp. 731 (D.P.R. 1977).....................................................12

Sheinberg v. Princess Cruise Lines, Ltd., 269 F.Supp.2d 1349 (S. D. Fla. 2003).............................8

Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte. Ltd., 585 F.3d 58 (2nd Cir. 2009) ..................4

Travis v. National City Bank of New York, 23 F. Supp. 363 (E.D.N.Y. 1938)................................9

NEWYORK 7683777 (2K)

Victrix Steamship Co., S.A., v. Salen Dry Cargo A.B., 825 F.2d 709 (2d Cir. 1987) .......................7

Vistra Trust Co. v. Stoffel, 2008 U.S. Dist. LEXIS 106493, 08 Civ. 2844 (S.D.N.Y. Dec. 29, 2008) ..................................................................................................................................7

York Hannover Holding A.G. v. Amer. Arbitration Ass'n, 794 F.Supp. 118 (S.D.N.Y. 1992) ....6, 7

## STATUTES AND RULES

9 U.S.C. § 205.................................................................................................................................5

12 U.S.C. § 632...............................................................................................................................9

12 U.S.C. §§ 3101-3108 ...............................................................................................................12

12 U.S.C. § 3102........................................................................................................................8, 11

28 U.S.C. § 1331.............................................................................................................................9

28 U.S.C. § 1348...........................................................................................................................11

Fed. R. Civ. P. 64(b) .......................................................................................................................4

N.Y. C.P.L.R. 5224(a)(3)................................................................................................................3

N.Y. U.C.C. Article 4A..................................................................................................................4

## MISCELLLANEOUS

Thomas J. McCormack, Robert Sidorsky & Dorollo Nixon, Jr., *Edge Act Enables National Banks to Invoke Federal Jurisdiction Over Suits Involving International Banking or Financial Operations*, 124 Banking L.J. 907, 908 (2007).........................................................12

Defendants Bank of China ("BOC-NY"), Bank of Communications Co. Ltd. ("BOCOM-NY"), China Construction Bank Corporation, China Merchants Bank Co., Ltd., Industrial and Commercial Bank of China Limited, and Agricultural Bank of China Limited (together, the "Chinese Banks") respectfully submit this Memorandum of Law in Opposition to the Motion to Remand this action to New York state court filed by plaintiff Samsun Logix Corp. ("Samsun"). [1]

This action relates to an international commercial transaction that has no connection to the United States, let alone New York State.  Samsun, a Korean company, seeks to enforce against three Chinese companies (the "Judgment Debtors") an English arbitral award arising from an English law contract for the shipment of iron ore from Brazil to China.  Although not revealed in its papers, Samsun had previously commenced federal proceedings under the U.S. Bankruptcy Code in aid of its Korean insolvency proceedings.  Samsun then commenced another federal proceeding before this Court seeking recognition of its English arbitral award.

Notwithstanding the federal proceeding as to its arbitral award, out of which it easily could have sought to enforce a judgment, Samsun chose to forum shop by commencing a new proceeding in New York state court (the "Petition") to enforce its judgment against the Judgment Debtors.  None of the Judgment Debtors maintain accounts or property at the Chinese Banks in New York (See Declaration of Marika Maris in Support of Opposition to Remand Motion, sworn to June 21, 2010 ("Maris Decl.") ¶ 9), and, indeed, none of the Judgment Debtors appear to be present in New York (or the United States).  Consequently, the Petition seeks to rely solely on the presence of the Chinese Banks in New York to support a global fishing expedition:  Samsun seeks to have the Chinese Banks report on property of the Judgment Debtors that may be located *"anywhere in the world"* and to have this Court order any such property transferred to New York

---

[1] "Remand Motion at ___" refers to Samsun's brief in support of its motion to remand this action to state court, dated June 7, 2010.

for attachment.  In doing so, Samsun is wasting the scarce resources of the U.S. court system by seeking a radical extension of New York law that it apparently feels much better about pursuing in New York state court.[2]

Given the international nature of this matter and its direct relationship to a pending action to enforce a foreign arbitral award under the New York Convention,[3] Samsun's Petition was removed to this Court on May 24 under the express terms of two federal laws (the "Notices of Removal").[4]  Samsun's Remand Motion asks this Court to ignore the express language of those federal laws, while offering no authority or cases on point to justify that result.  As discussed below, this action, which emanated from this Court, is properly in federal court.

## FACTS

### 1. Non-U.S. Parties in a Non-U.S. Underlying Dispute

The Petition reveals certain undisputed facts.  As noted, Samsun's English arbitral award arose from a contract by which Samsun, a Korean company, contracted to have iron ore shipped from Brazil to China by a Chinese company Dalian Dong Zhan Group ("DZG").  The contract provided for English law and arbitration.  The Petition reveals no U.S. contacts relating to the contracting parties or the transaction in question.  See Maris Decl. ¶ 2, Ex. A.

---

[2] To the extent that Samsun would rely on the recent New York Court of Appeals decision in Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533 (2009) in seeking access to assets located outside of the United States, this reliance is misplaced.  The Chinese Banks intend to move to dismiss Samsun's Petition after this motion is decided, and in doing so will show that Koehler did not hold that a branch bank may be forced to search for, restrain and/or transfer non-U.S. assets.  Moreover, given the Judgment Debtors' lack of U.S. contacts, Koehler cannot constitutionally support the extension of jurisdiction sought by Samsun here.

[3] United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958) (the "New York Convention").

[4] As discussed below, BOC-NY and BOCOM-NY removed under federal banking law (the "Notice of Removal"), and Standard Chartered Bank removed under the Federal Arbitration Act (the "Amended Notice of Removal") before being dismissed from the action by Samsun.  If either grounds for removal is sustained, then all defendants would remain in federal court.  Remand Motion at 6-7, n.4.

After a dispute arose, Samsun arbitrated in London and obtained an award against DZG. See Maris Decl. ¶ 3, Ex. B. Relying on the New York Convention, Samsun obtained an order from this Court recognizing and enforcing the English arbitral award as against the Judgment Debtors, which now included three Chinese companies, DZG, as well as Beitai Iron & Steel Group Importing & Exporting ("Beitai") and Hong Kong Dongzhan Logistics.[5] See Maris Decl. ¶ 5, Exs. D-1 and D-2. Samsun's papers nowhere reveal any New York or U.S. contacts of the Judgment Debtors. Indeed, Beitai, the only Judgment Debtor to appear in the recognition action, limited its appearance to objecting to personal jurisdiction. See Maris Decl. ¶ 6, Ex. E.

The Chinese Banks are incorporated in the People's Republic of China, and licensed here under federal or New York banking law to conduct certain business in the United States. Five of the Chinese Banks maintain branches in New York City, while one maintains only a representative office which may not undertake any banking operations.[6] Samsun's subpoenas and Petition seek property and information located "anywhere in the world." See Maris Decl. ¶ 8, Ex. G. The Chinese Banks have responded to the subpoenas to the extent information is located in New York.[7]

2. **Samsun's Reliance On Federal Court Litigation**

---

[5] Although the English arbitral award was only against DZG, before this Court, Samsun alleged that Beitai was a guarantor of the underlying contract. See Samsun Motion for Judgment Recognizing a Foreign Arbitration Award, dated Dec. 2, 2009 (Maris Decl. ¶ 4, Ex. C). The Petition does not reveal how Samsun established personal jurisdiction over the Judgment Debtors.

[6] The New York branches of BOC-NY and BOCOM-NY are federally licensed. The New York branches of China Construction Bank Corporation, China Merchants Bank Co., Ltd., Industrial and Commercial Bank of China Limited, and the representative office the Agricultural Bank of China Limited are licensed under New York law. See Maris Decl. ¶ 7, Exs. F-1 through F-6.

[7] Maris Decl. ¶ 9, Exs. H-1 through H-6. As expressly permitted by N.Y. C.P.L.R. 5224(a)(3), counsel to the Chinese Banks, as agent, verified the responses.

Notwithstanding its present desire to be in New York state court, Samsun generally has pursued its U.S. interests in federal court. In 2009, Samsun commenced insolvency proceedings in Korea and a receiver was appointed for the company. See Maris Decl. ¶ 10, Ex. I. Eventually, Samsun's creditors approved a Korean restructuring plan. See Maris Decl. ¶ 11, Exs. J-1 and J-2. Although nowhere mentioned in the Remand Motion, to protect its U.S. assets, Samsun brought a Chapter 15 proceeding in this District. See Maris Decl. ¶ 10, Ex. I. Interestingly, in that proceeding, the reach of the court's order is limited to assets within the territorial jurisdiction of the United States. See Maris Decl. ¶ 12, Ex. K.

When it received its foreign arbitral award, Samsun again came to this District to enforce that award against the Judgment Debtors. See Maris Decl. ¶ 5, Ex. D-2. But, rather than pursuing attachment in the pending proceeding before this Court under Federal Rule of Civil Procedure 64(b), Samsun then shopped forums by initiating state court proceedings to enforce its judgment. It is worth noting that, in doing so, Samsun's counsel broke from its usual practice, presumably based on a change in federal law which now prevents Samsun from circumventing New York law through attachments based on federal maritime rules and forms.[8]

Although under federal law, as explained below, the Chinese Banks could have removed this action anytime before trial, they removed contemporaneously with their subpoena responses.

---

[8] In 2009, the Second Circuit brought federal practice into line with New York law by holding that electronic fund transfers through intermediate banks cannot be attached under N.Y. U.C.C. Article 4A. Shipping Corp. of India, Ltd. v. Jaldhi Overseas Pte. Ltd., 585 F.3d 58, 71 (2nd Cir. 2009). Samsun's counsel represented the party seeking to attach wire transfers in Jaldhi, and thereby used federal proceedings to avoid New York law and capture wire transfers in federal court that could not be captured via New York court proceedings. Indeed, in the related case before this Court (Index No. 08 Civ. 9458 (VM)), Samsun originally sought a maritime attachment against the Judgment Debtors. See Maris Decl. ¶ 13, Ex. L. That attachment was vacated after Jaldhi. See Maris Decl. ¶ 14, Ex. M. Now, unable to attach wire transfers passing through New York, it is *Samsun* that seeks a test case (Remand Motion at 3), by seeking to avoid federal court while attempting to extend New York law to the attachment of wholly non-New York assets.

See Maris Decl. ¶ 9.  Subsequently, this Court recognized that this action is related to Samsun's pending federal proceeding to enforce the London arbitral award.  See Maris Decl. ¶ 18.

## ARGUMENT

### I.  This Action Is Removable Because It Relates To An Arbitration Award Under the New York Convention

Under the Federal Arbitration Act ("FAA"), at 9 U.S.C. § 205, a defendant may remove to federal court any action that "relates to" an arbitration agreement or award under the New York Convention.  In relevant part, Section 205 states:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or defendants may, at any time before the trial thereof, remove such action or proceeding to . . . district court . . . .

Samsun's pending action before this Court relates to both an arbitration agreement and an award under the New York Convention.  That this action is "related to" a foreign arbitral award is clear on the face of Samsun's Petition, which details Samsun's success in a London arbitration and that this action is seeking to recover all or part of that arbitral award.  It also is clear because this Court has recognized this action as related to Samsun's pending federal action on its London arbitral award.  See Maris Decl. ¶ 18.  As such, removal was proper under FAA § 205 and the Remand Motion should be denied.

That this action is "related to" an award falling under the Convention also is confirmed by the broad interpretation courts have given to the FAA.  See Beiser v. Weyler, 284 F.3d 665, 669 (5th Cir. 2002); Banco De Santander Central Hispano, S.A. v. Consalvi Int'l Inc., 425 F.Supp.2d 421, 428 -430 (S.D.N.Y. 2006) (citing Beiser for the proposition that section 205 confers broad jurisdiction); Acosta v. Master Maint. & Const., Inc., 52 F.Supp.2d 699, 703-704 (M.D.La. 1999) ("Congress, in creating and providing for original federal jurisdiction, also

intended to provide the broadest removal statute in the federal code. The purpose behind such a liberal removal provision was to insure that there would be a uniform federal common law regarding international arbitral obligations.") (citing McDermott International, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199 (5th Cir. 1991)).[9]  In Beiser, the court held that the plain meaning of the phrase "relates to" sweeps broadly to encompass a suit regarding contracts that contained an arbitration agreement.  Id. at 669.  Beiser also noted that the Supreme Court has described the "normal sense" of the phrase "relates to" as having a "connection with" or "reference to," and that relates to "generally conveys a sense of breadth."  Id. (citations omitted). Samsun's Petition expressly refers and is connected to an international arbitral agreement and its enforcement under the New York Convention.

Samsun ignores Beiser and decisions in this District which have followed that case.  For example, in Banco De Santander, the court followed Beiser and specifically found that Section 205 must be interpreted broadly because the statutory scheme allowing removal was enacted to "serve and promote" federal goals on a comprehensive basis.  425 F.Supp.2d at 432.  Other courts in this District have held that Section 205 applies not only to state court actions seeking to enforce foreign arbitration agreements or set aside foreign arbitral awards, but to *any other actions* involving arbitral awards.  See York Hannover Holding A.G. v. Amer. Arbitration Ass'n, 794 F.Supp. 118, 122 (S.D.N.Y. 1992) (rejecting "narrow" construction of Section 205).

Having ignored relevant authority, Samsun then misstates Second Circuit authority by asserting that the "Convention does not apply to the enforcement of judgments that confirm arbitration awards."  Remand Motion at 12, citing Victrix Steamship Co., S.A., v. Salen Dry

---

[9] In Acosta, the court also found that the phrase "relates to" does not require the parties in a state court action to be signatories to the arbitration agreement in dispute to support removal.  Acosta, 52 F.Supp.2d at 706.

Cargo A.B., 825 F.2d 709, 713 fn.2 (2d Cir. 1987); Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313, 1319 (2d Cir. 1973).  Victrix and Island Territory of Curacao, however, are referring to *foreign court judgments* enforcing arbitral awards, and only hold that the FAA does not provide a basis for the enforcement of *those* foreign court judgments.  Both cases related to comity and the enforcement of *foreign* judgments; neither related to the jurisdiction of federal courts under the FAA as to U.S. court enforcement of foreign arbitral awards.  See Island Territory of Curacao, 489 F.2d at 1319 (since FAA did not deal with the enforcement of foreign judgments, New York Convention "itself and its enforcing legislation go only to the enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards"); Victrix, 825 F.2d at 713 (enforcement of British judgment confirming foreign arbitral award covered by principles of comity, not the FAA).  Nothing in these cases supports the idea that a U.S. court action, like this one, seeking to enforce in U.S. court a foreign arbitral award is outside the purview of the FAA.

### a. All Required Parties Have Consented To Removal

Samsun asserts that not all respondents have consented to removal.  Remand Motion at 11.  Samsun, however, neglected to inform this Court that the only two remaining defendants other than the Chinese Banks are, at most, nominal defendants.  Even Samsun's cases recognize that nominal (or, presumably, non-party) defendants need not consent to removal.  Vistra Trust Co. v. Stoffel, 2008 U.S. Dist. LEXIS 106493, 08 Civ. 2844, at *11 (S.D.N.Y. Dec. 29, 2008); see York, 794 F.Supp. at 121-122 ("The requirement of unanimous consent among defendants does not apply to 'nominal or formal parties,' whose wishes 'may be disregarded.'").

The Chinese Banks have learned that the Hong Kong and Shanghai Banking Corporation Limited ("HSBC") has not been served in this action, and that a different HSBC entity, which

was served, has rejected service as improper.  See Maris Decl.  ¶ 16.  Counsel for that entity believes that HSBC, if properly served, probably would consent to removal.  Id.  With respect to Chinatrust Commercial Bank, Samsun's counsel has not identified an individual who accepted service (or an address with an active telephone number), and Samsun appears not to have served Chinatrust with its Remand Motion (which would have been required were Chinatrust a true defendant in this action).  See Maris Decl.  ¶ 17.  As such, it appears that the consent issue has been manufactured in that all active defendants in this action, i.e. the Chinese Banks, have consented to removal.[10]

## II. This Action Is Removable Because It Arises Out Of An International Banking Transaction

BOC-NY and BOCOM-NY are federally licensed branches of foreign banks.  See Maris Decl.  ¶ 7.  Under federal law, the New York branches of both banks are entitled to exercise the same rights as national banks under federal law.  See 12 U.S.C. § 3102(b) (the "operations of a foreign bank at a Federal branch or agency shall be conducted with the same rights and privileges as a national bank at the same location").

Federal banking law, in turn, allows a national bank to remove actions like this by deeming actions involving international banking transactions to "arise under" federal law.  Thus,

---

[10] Even where the consent of all defendants is required, courts have found that, as is the case here, the removal petition need only contain a statement of the non-signing defendants' consent. See Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367, 383 (S.D.N.Y. 2006). The Amended Notice of Removal states that all defendants with counsel did consent to removal. See Maris Decl. ¶ 15.  Moreover, even if consent was missing as to any party, which it is not, the plain language of Section 205 overrides the normal Federal Rule requirement tying consent to the 30-day window for removal.  See Sheinberg v. Princess Cruise Lines, Ltd., 269 F.Supp.2d 1349, 1352 (S. D. Fla. 2003) (removal was timely, even though co-defendant did not consent to original notice of removal within 30 days of the time the case became removable; 30-day time limit did not apply to action removed under FAA, which allowed removal at any time before trial); Dale Metals Corp. v. Kiwa Chemical Industry Co., Ltd., 442 F.Supp. 78, 81, n. 1 (S.D.N.Y. 1977) (same).  Once again, Samsun simply ignores this authority, which mandates that the Remand Motion be denied

12 U.S.C. § 632 states that all suits involving a national bank "arising out of transactions involving international or foreign banking . . . shall be deemed to arise under the laws of the United States." Samsun's Petition expressly seeks property located anywhere in the world, as to Chinese companies with no U.S. connections which contracted with a Korean company to ship goods from Brazil to China. Any property sought or located and involving the Chinese Banks would, by necessity, involve international or foreign banking transactions, and would be covered by Section 632, which would support removal. See 28 U.S.C. § 1331 (federal question statute applying to all actions "arising under" federal law).[11]

### a. It is Well-Settled that 12 U.S.C. § 632 Applies to National Banks

Samsun's argument that Section 632 does not apply here because it "does not even refer to national banks" (Remand Motion at 10) cites no authority and simply ignores well-settled law which holds that 12 U.S.C. § 632 (under the so-called Edge Act) *does* apply to national banks. See Travis v. National City Bank of New York, 23 F. Supp. 363, 366-7 (E.D.N.Y. 1938) (12 U.S.C. § 632 includes national banks engaged incidentally in foreign banking); see also

---

[11] The suggestion by Samsun that it is "ironic" that the Chinese Banks only provided information in the "possession, custody, or control" of their New York branches is misguided. (Remand Motion at 6-7). As noted above, Samsun's efforts to reach non-U.S. bank assets inherently implicate international or foreign banking. In limiting their responses to information located in New York, the Chinese Banks were simply following the separate entity rule, which recognizes that no one branch controls a given bank's entire network and that compelling a branch to process attachment orders directed at a bank's entire worldwide network would place an "intolerable burden" on that branch. This longstanding rule is recognized in both New York and federal courts. See, e.g., Cronan v. Schilling, 100 N.Y.S.2d 474, 476 (N.Y. Sup. 1950), *aff'd* 282 A.D. 940 (1st Dep't 1953) ("a warrant of attachment served upon a branch bank does not reach assets held for, or accounts maintained by, the defendant in other branches or in the home office"); Lok Prakashan Ltd. v. India Abroad Publications, Inc., No. 00 Civ.5862(LAP), 2002 WL 1585820 (S.D.N.Y. July 16, 2002) (New York branch of Indian bank was separate entity from Indian branch of bank, where judgment debtor had account, and presence of New York branch did not give federal court personal jurisdiction over Indian branch for purpose of attaching or freezing debtor's assets). As the Chinese Banks will show on their motion to dismiss, Koehler did not alter the separate entity rule.

Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 792 (2d Cir. 1980) ("SPIB is a nationally chartered bank entitled to the protection offered by 12 U.S.C. s. 632"); Bank of America Corp. v. Lemgruber, 385 F. Supp. 2d 200, 207 (S.D.N.Y. 2005) ("BNA was formed as a national bank organized under the laws of the United States and thus its presence as a party to this action would satisfy the first requirement for the Court's exercise of subject matter jurisdiction under the Edge Act."); Contitrade Services Corp. v. Eddie Bauer, Inc. 794 F. Supp. 514, 517 (S.D.N.Y. 1992) ("Section 632 confers jurisdiction on the district courts over suits arising out of national banks engaging in banking activities with foreign companies.").

Samsun offers no authority to suggest that BOC-NY and BOCOM-NY are not entitled to use Section 632 as a national bank would, and there is no doubt that as federally licensed branches they are entitled to the "rights and privileges" of a national bank branch under 12 U.S.C. § 3102(b).  As such, under the plain terms of the federal banking laws, this action arises under federal law and is removable under 28 U.S.C. § 1331.

### b. Samsun's Cases on Section 3102(b) Have Nothing to Do with Federal Question Jurisdiction

Having failed to provide any basis for ignoring the express terms of federal banking law, Samsun instead relies on two cases to argue that somehow federally-licensed Chinese Banks are not entitled to exercise the rights of national banks under Section 632, notwithstanding the language of Section 3102(b).  Neither case, however, involved Section 632 – which, as noted above, relates to federal question jurisdiction.

In McHugh v. Westpac Banking Corp., Nos. 93 C 3058, 93 C 3059, 1995 WL 243339 (N.D.Ill. Apr. 24, 1995) (Remand Motion at 8), the court was considering the effect of Section 3102 on citizenship with respect to *diversity* jurisdiction.  Id. at *1.  In holding that "neither the language of § 3102 nor the legislative history of the International Banking Act indicates that §

1348's <u>specific grant of jurisdiction over and designation of the citizenship</u> of national banking associations was meant to encompass [foreign banks]," the court ***never*** considered any issue relating to federal question jurisdiction.  <u>Id.</u> at *4 (emphasis added).  This is not surprising, in that 12 U.S.C. § 632 is not mentioned at all.  Rather, <u>McHugh</u> involved 28 U.S.C. § 1348, which by its terms relates to "all other actions in which a national banking association may be involved."  Section 1348 does not create federal question jurisdiction (unlike 12 U.S.C. § 632), but instead addresses jurisdiction based on citizenship as the basis for federal jurisdiction.  Similarly, <u>Elmaliach</u> v. <u>Bank of China Ltd.</u>, 09 Civ. 2130, 2010 WL 1172829 (S.D.N.Y. March 26, 2010) relied on <u>McHugh</u> because it nowhere mentioned 12 U.S.C. § 632.

      Rather than read <u>McHugh</u> and <u>Elmaliach</u> in accord with their circumstances, Samsun selectively cites from these cases in arguing that courts have found that the International Banking Act (which includes 12 U.S.C. § 3102) cannot be interpreted to provide a basis for removal to federal court.  (Remand Motion at 8-10).  Nothing in either case supports that argument.  The logical reading of both cases is that in assessing the rights and privileges of a federally licensed foreign bank branch for *diversity of citizenship* purposes, Section 3102 must be read in a manner consistent with 28 U.S.C. § 1348.  Indeed, although ignored by Samsun, <u>McHugh</u>, in fact, recognizes that foreign branch banks are supposed to be treated as national banks would be treated under federal law.  In analyzing the citizenship provisions of Section 1348, the court found that the purpose of the provision was to "limit the access of national banks to, and their suability in, the federal courts to the same extent to which non-national banks are so limited."  <u>McHugh</u>, 1995 WL 243339, at *4.

      Here, under 12 U.S.C. § 632, national banks are entitled to bring certain cases to federal court because those cases "involve" international banking transactions and are deemed to arise

under federal law.  Section 632 was enacted for the purpose of "guarantee[ing] the foreign party a real or presumed higher level of judicial consideration – at the national level – and the application of a uniform 'federal common law' as compared with lower level state courts and the application of varied state law." *See* Thomas J. McCormack, Robert Sidorsky & Dorollo Nixon, Jr., *Edge Act Enables National Banks to Invoke Federal Jurisdiction Over Suits Involving International Banking or Financial Operations*, 124 Banking L.J. 907, 908 (2007) (citing Pujals v. First Nat'l City Bank, 440 F. Supp. 731, 732 (D.P.R. 1977)).  McHugh endorses the idea that under Section 3102(b) federally licensed foreign branch banks should be entitled to the same access to federal court as national banks in like circumstances.[12]

---

[12] See also Conference of State Bank Supervisors v. Conover, 715 F.2d 604, 606 (D.C. Cir. 1983) (upholding regulations adopted by the Comptroller of the Currency under 12 U.S.C. §§ 3101-3108 and quoting the Senate report on the statute which noted that these provisions "establishe[d] the principle of parity of treatment between foreign and domestic banks in like circumstances" and "sought to provide foreign banks with national treatment under which foreign enterprises…are treated as competitive equals with their domestic counterparts." (internal citations omitted)).

## **CONCLUSION**

For the foregoing reasons, the Defendant Chinese Banks respectfully request that Plaintiff Samsun's Motion to Remand this matter to New York State Supreme Court be denied.

Respectfully submitted,

Dated: June 21, 2010

WHITE & CASE LLP

By: /s/ Owen C. Pell
    Owen C. Pell
    Marika Maris
    1155 Avenue of the Americas
    New York, New York  10036
    Telephone: (212) 819-8200
    Facsimile: (212) 354-8113
    opell@whitecase.com

    *Attorneys for Bank of China, Bank of Communications Co. Ltd., China Construction Bank Corporation, China Merchants Bank Co., Ltd., Industrial and Commercial Bank of China Limited, and Agricultural Bank of China*